IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BERNARD K. BRANDON,               )
                                  )
            Plaintiff,            )
                                  )
     v.                           )     1:13CV51
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of            )
Social Security,                  )
                                  )
            Defendant.            )


<u>**MEMORANDUM OPINION AND ORDER**</u>

**OSTEEN, JR., District Judge**

Plaintiff Bernard K. Brandon ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) to obtain review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claims for Social Security Disability and Supplemental Security Income benefits under Titles II and XVI of the Social Security Act ("the Act").

Presently before this court are Plaintiff's Motion for Judgment on the Pleadings (Doc. 11), and the Commissioner's Motion for Judgment on the Pleadings (Doc. 16). This court also has before it the certified administrative record,[1] and this matter is now ripe for adjudication.

_____

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 8.)

After a careful consideration of the evidence of record, the Decision of the Administrative Law Judge ("ALJ"), and the governing legal standard, this court will find that remand is proper.

## I.   BACKGROUND

Plaintiff filed an application for Supplemental Security Income benefits on March 29, 2011, alleging a disability beginning on March 29, 2011. (Tr. at 20). The claim was denied initially and upon reconsideration. (Id.) A hearing before an ALJ was held on June 13, 2012. (Id.)

After the hearing, the ALJ determined that Plaintiff was not disabled under the Act. (Id. at 30.)[2] The ALJ concluded that (1) Plaintiff had not engaged in substantial gainful activity during the relevant period, and (2) Plaintiff had severe

_____

[2] "The Commissioner uses a five-step process to evaluate disability claims." Hancock v. Astrue, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [his] past relevant work; and (5) if not, could perform any other work in the national economy." Id. A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. Id. "Additionally, if the claimant's disability can be determined at any step, the inquiry need not continue." Bryant v. Colvin, 571 F. App'x 186, 188 (4th Cir.) (citing Hancock, 667 F.3d at 472), cert. denied, ____ U.S. ____, 135 S. Ct. 727 (2014).

-2-

impairments including: umbilical hernia; history of tricuspid valve endocarditis and tricuspid valve replacement; restrictive lung disease; and depression. (Id. at 22.) At step three, the ALJ concluded that the impairments, either alone or in combination, did not meet or equal a listed impairment. (Id. at 23.) The ALJ then determined that Plaintiff had the residual functional capacity ("RFC")[3] to perform light work except for unskilled jobs and that he could understand, remember, and carry out simple instructions and sustain attention and concentration to perform simple tasks. (Id. at 24.) Based on that determination and given Plaintiff's status as "an individual closely approaching advanced age," his limited education and ability to communicate in English, and his lack of past relevant work or job skills, the ALJ found that the Medical-Vocational Guidelines and the vocational expert's testimony directed a

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines v. Barnhart, 453 F.3d 559, 562 (4th Cir. 2006) (20 C.F.R. § 404.1545(a)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)," to determine "his maximum capacity for sustained performance of the physical and mental requirements of jobs." Hall v. Harris, 658 F.2d 260, 265 (4th Cir. 1981). "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63 (citing 20 C.F.R. § 404.1529(a)).

finding that Plaintiff is "not disabled." (Id. at 29-30 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 202.10, 204.00).)

Accordingly, the ALJ denied Plaintiff's application in a June 21, 2012 decision. (Id. at 30.) The Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (Id. at 1.) Plaintiff filed the present action on January 21, 2013.

## II.  **LEGAL STANDARD**

Federal law authorizes judicial review of the Commissioner's denial of social security benefits. 42 U.S.C. §§ 405(g), 1383(c); Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006) (citations omitted). However, "courts are not to try the case de novo," Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974), and the scope of review "is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). Instead, a reviewing court "must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "It 'consists of more than a mere scintilla of

-4-

evidence but may be less than a preponderance.' " Id. (citation

omitted). Essentially,

> "[i]f there is evidence to justify a refusal to direct
> a verdict were the case before a jury, then there is
> 'substantial evidence.'" It is not [a court's] place
> to weigh the evidence or to substitute [its] judgment
> for that of the Secretary if that decision was
> supported by substantial evidence.

Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (citation

omitted).

"In reviewing for substantial evidence, [courts] do not

undertake to reweigh conflicting evidence, make credibility

determinations, or substitute [their] judgment for that of the

[ALJ]." Hancock, 667 F.3d at 472 (citation omitted). Rather,

"[w]here conflicting evidence allows reasonable minds to differ

as to whether a claimant is disabled, the responsibility for

that decision falls on the [ALJ]." Id. (citation omitted).

Thus, the issue before this court "is not whether

[Plaintiff] is disabled, but whether the ALJ's finding that []he

is not disabled is supported by substantial evidence and was

reached based upon a correct application of the relevant law."

Craig v. Chater, 76 F.3d 585, 588 (4th Cir. 1996).

Upon review of an ALJ's decision, a court cannot and should

not expect the ALJ to engage in a statement-by-statement review

of the claimant's testimony; however, an ALJ's analysis cannot

be over-broad and instead must provide enough detail to allow
the court to conduct a meaningful review, within the substantial
evidence standard. See Mascio v. Colvin, 780 F.3d 632, 636 (4th
Cir. 2015) ("In that regard, we agree with the Second Circuit
that '[r]emand may be appropriate . . . where an ALJ fails to
assess a claimant's capacity to perform relevant functions,
despite contradictory evidence in the record, or where other
inadequacies in the ALJ's analysis frustrate meaningful review.'
We find this to be such a case." (quoting Cichocki v. Astrue,
729 F.3d 172, 177 (2d Cir. 2013)) (emphasis added)); Torres v.
Colvin, CIVIL ACTION NO. 1:14-CV-00007-RLV, 2016 WL 54933, at *8
(W.D.N.C. Jan. 5, 2016) ("Consequently, the ALJ's decision
cannot be affirmed because the Court cannot conduct a
'meaningful review' of his findings to determine whether his
assessment of Plaintiff's residual functional capacity is
supported by substantial evidence. Therefore, remand is
required." (citation omitted)); Hicklin-Jones v. Colvin, CIVIL
ACTION No. 3:14-CV-584, 2015 WL 8958542, at *6 (W.D.N.C.
Dec. 15, 2015) (declining to remand where "[t]he Court [wa]s not
left to guess at how the ALJ arrived at his conclusions").

## III. <u>INTERVENING PRECEDENT AND PARTIES' ASSERTIONS</u>

Upon reviewing the ALJ's decision, it appeared to this
court that the United States Court of Appeals for the Fourth

-6-

Circuit's recent ruling in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), may be applicable. (Order (Doc. 18) at 1-2.) This court had additional concerns regarding some statements in the ALJ's report and evidence in the record. (<u>Id.</u> at 2-3.) Consequently, the court requested that both parties brief the matters. (<u>Id.</u>) The court has received and reviewed the Commissioner's supplemental briefing, (Doc. 19), and Plaintiff's supplemental briefing, (Doc. 22).

Plaintiff argues that <u>Mascio</u> warrants remand for credibility determinations, given the use of identical boilerplate as that used in <u>Mascio</u> and the lack of a sufficient credibility determination elsewhere. (Pl.'s Suppl. Br. (Doc. 22) at 1-5.) Plaintiff further attacks the ALJ's credibility determination by arguing that "[t]he ALJ's summary of [Plaintiff's] testimony contains errors," (<u>id.</u> at 3-4), and "the ALJ ignored evidence that did not comport with her credibility finding." (<u>Id.</u> at 5.)

Defendant concedes that the ALJ used objectionable <u>Mascio</u> boilerplate but argues that the error is harmless because "the ALJ properly analyzed Plaintiff's credibility" elsewhere and "explained why she found that Plaintiff's testimony and other statements were not fully credible." (Def.'s Suppl. Br. (Doc. 19) at 2.) Defendant takes the ALJ's generalized determinations

-7-

and provides detailed support for them from the record to demonstrate inconsistency between Plaintiff's testimony and other evidence on record and to support the ALJ's characterization of Plaintiff's testimony as "only partially credible." (Id. at 2-3.)

**IV.  ANALYSIS**

Craig v. Chater provides a two-part test to evaluate the credibility of a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" 76 F.3d at 594 (quoting 20 C.F.R. §§ 416.929(b) & 404.1529(b)) (emphasis removed). If this threshold test is satisfied and the ALJ determines that the claimant has shown that such an impairment exists, id. at 595, the second part of the test allows the ALJ to "consider[] the credibility of [the claimant's] subjective allegations of pain." Id. at 596. At this second step, the ALJ must consider all available evidence to determine "the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work" and whether the claimant is disabled. Id. at 595-96. While the ALJ must consider the claimant's allegations and may not

-8-

"discredit[] [them] solely because they are not substantiated by objective evidence of the pain itself or its severity," she need not credit them "to the extent they are inconsistent with the available evidence," including the "objective medical evidence" or "the extent to which th[e] impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Id. Where the ALJ has considered these factors, heard the plaintiff's testimony, and observed his demeanor, the credibility determination is entitled to deference. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ completed the two-step Craig analysis, as laid out in her determination, (Tr. at 24-25), but, in the opinion of this court, the ALJ committed error at step two in considering the subjective allegations of pain, or at least insufficiently explaining her reasoning as to the subjective allegations.

First, the ALJ stated that she had "careful[ly] consider[ed] the evidence" and "f[ound] that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Id. at 25.) Thus, the ALJ properly discharged her duty under Craig's first step.

Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), elucidates how the ALJ erred under Craig's second step. The Mascio ALJ

-9-

erred when using "boilerplate" language at step two of the credibility assessment, stating that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. at 639. This method problematically "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" Id. (citation omitted). Instead, "the ALJ . . . should have compared [the claimant's] alleged functional limitations from pain to the other evidence in the record, not to [the claimant's] residual functional capacity." Id.

Applying Mascio, the ALJ here erred at Craig's second step by considering the credibility of Plaintiff's testimony through the use of the same objectionable boilerplate used in Mascio: Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. at 25.)

Nevertheless, an "ALJ's error [c]ould be harmless if he properly analyzed credibility elsewhere." Mascio, 780 F.3d at

639. An ALJ discharges this obligation when he "explain[s] how
he decided which of [the claimant's] statements to believe and
which to discredit, other than the vague (and circular)
boilerplate statement that he did not believe any claims of
limitations beyond what he found when considering [the
claimant's] residual functional capacity." Id. at 640. Remand is
needed when an adequate explanation is lacking. See id. To
render the error harmless, the "credibility evaluation must
account for 'all the available evidence,' and must contain
'specific reasons for the finding on credibility, supported by
the evidence in the case record.'" Gentry v. Colvin, No. 2:13-
CV-66-FL, 2015 WL 1456131, at *6 (E.D.N.C. Mar. 30, 2015)
(citations omitted). The question here is whether the ALJ
properly analyzed Plaintiff's credibility elsewhere, making the
error harmless.

Explanations insufficient to overcome Mascio boilerplate
have included a situation involving an "administrative record
[that] reflect[ed] conflicting evidence not addressed by the
ALJ, particularly concerning Plaintiff's ability to stand or
walk for a full workday." Carver v. Colvin, No. 1:13CV13, 2015
WL 4077466, at *8 (M.D.N.C. July 6, 2015). Problematically, in
Carver, the "ALJ further failed to provide any explanation for
deeming noncredible Plaintiff's statements concerning his

-11-

inability to stand or walk for a full workday." Id. at *9

("[T]he ALJ did not discuss his rejection of Plaintiff's

statements concerning his ability to stand o[r] walk beyond the

boilerplate assertion that 'these symptoms are not credible to

the extent they are inconsistent with the above [RFC]

assessment.'"). Further, "the ALJ did not offer any other

explanation for his determination that Plaintiff's statements

concerning pain specifically lacked credibility" and "[i]nstead

. . . generally described 'the inconsistency between the

claimant's statements and the medical evidence of record, as

well as the claimant's failure to seek treatment for his

impairments.'" Id. at *11 (noting the mismatch between the ALJ's

assessment about the impact of the inconsistency on the

assessments on pain and vision); see also id. at *12 ("In sum,

the ALJ's failure to articulate any reason (beyond the

boilerplate language) for rejecting Plaintiff's complaints of

pain regarding his physical impairments constitutes error and,

thus, the Court should remand.").

   Even an ALJ's description of the plaintiff's testimony and

discussion of some reasons for partially discounting it were

insufficient where he "never specifically addressed [a]

particular statement in his credibility analysis [that] he

erroneously attributed to [the plaintiff] in his summation of

her testimony," making it "unclear whether the ALJ ever considered [the plaintiff's] assertion" and "whether the ALJ set [the plaintiff's] RFC . . . based — in whole or in part — on an erroneous assumption." Byas v. Colvin, No. 1:13CV151, 2015 WL 3791444, at *5 (M.D.N.C. June 17, 2015). That "lack of clarity prevent[ed] meaningful review" and the matter was remanded. Id.

In cases where a proper credibility determination renders harmless an improper use of Mascio boilerplate, ALJs have engaged in "credibility analys[e]s . . . susceptible to judicial review and supported by substantial evidence." Belton v. Colvin, No. 1:14CV777, 2015 WL 5023087, at *7 n.5 (M.D.N.C. Aug. 24, 2015).[4] For example, one ALJ engaged in a sufficient credibility assessment where, "[i]n making that part two finding, the ALJ discussed the [relevant] medical history and medical signs . . . [,] reviewed observations from Plaintiff's treating providers . . . [, and] compared Plaintiff's own statements in the medical record and at the hearing concerning her daily activities,"

---

[4] One example of a sufficient credibility analysis in a case not involving Mascio boilerplate consisted of the ALJ summarizing the claimant's hearing testimony and then contrasting it with the record in a back-and-forth manner to support his finding that her testimony was only partially credible. Campbell v. Colvin, Civil NO. 3:14CV725-RJC-DSC, 2015 WL 7750194, at *5-6 (W.D.N.C. Sept. 16, 2015) ("The ALJ properly found that Plaintiff's statements were only partially credible and cited to substantial evidence in support of his findings.").

-13-

rendering "the ALJ's credibility analysis" compliant "with the regulations and Fourth Circuit law." Mason v. Colvin, No. 1:13CV1150, 2015 WL 4460348, at *6 (M.D.N.C. July 21, 2015).

Mascio boilerplate was found harmless where the ALJ "discussed the medical history and medical signs relevant to each type of pain Plaintiff alleged," "reviewed observations from five of Plaintiff's treating providers . . . which indicate[d] that those providers could not find a satisfactory medical explanation for Plaintiff's pain," "evaluat[ing] Plaintiff's own statements in the medical record and at the hearing which tended to show that his pain did not qualify as disable[ed]," and finally "discuss[ing] the medical opinion evidence." Long v. Colvin, No. 1:13CV0659, 2015 WL 1312919, at *5 (M.D.N.C. Mar. 24, 2015). Although the ALJ did not "recount each piece of evidence in assessing Plaintiff's credibility," the ALJ used sufficient detail and analysis to sufficiently show why the statements were characterized as they were and how the evidence was analyzed. See id.; see also Scott v. Colvin, No. 5:14-CV-291-RJ, 2015 WL 5607830, at *11 (E.D.N.C. Sept. 23, 2015) (discussing a credibility determination where "the ALJ went on to give specific reasons why he found Claimant to be only partially credible," including the level of treatment versus his alleged impairments, according to the medical record,

-14-

and issues concerning the claimant's financial status).

Most illustrative for purposes of this case is the credibility analysis in Young v. Colvin, No. 5:13-CV-823-FL, 2015 WL 1433544 (E.D.N.C. Mar. 27, 2015), "where the ALJ expressly addressed each of [the] plaintiff's statements to be discredited, and thoroughly explained why each lacked credibility, using medical evidence, [the] plaintiff's own testimony, as well as inferences drawn therefrom to support its decision." Id. at *3 (emphasis added). There, "where the ALJ identified plaintiff's statements which lacked credibility, and then performed a statement-by-statement analysis, using evidence and testimony, as well as the inferences drawn therefrom, to explain why those statements were not credible, the court determine[d] that the ALJ's additional use of improper boilerplate language was harmless." Id. at *4.

Here, following the objectionable Mascio boilerplate, the ALJ provided some further analysis:

> In evaluating the persuasiveness of the claimant's testimony and other statements, the undersigned notes the following. First, the claimant's statements are unsupported by and inconsistent with other evidence of record. The claimant alleged significant dizziness and chest pain when walking or standing for more than a few minutes. However, in multiple treatment notes with cardiovascular specialists and other treating physicians, the claimant denied those symptoms, alleging only some shortness of breath with exertion. His assertion that his pain and other symptoms have

-15-

been exacerbated often and required emergent treatment
is unsupported by medical evidence documenting such
treatment. His allegation regarding pain with reaching
is not corroborated by any similar complaint to
treating or examining sources. The claimant testified
that he cannot do much around the house, but
specifically reported no difficulty with independent
performance of daily activities during the relevant
time period.

The undersigned also notes the claimant has a very
sparse work history. The claimant's failure to perform
substantial gainful activity during periods of time
when he was not limited by these or other impairments
suggests his current inability to work may be due to
something other than the limiting effects of his
severe impairments.

Because of these factors, the claimant's statements
are deemed partially credible. In situations where the
claimant's statements are not supported by other
evidence of record, they have been given little
weight.

(Tr. at 25.) This analysis indicates to some extent how the ALJ

determined which of Plaintiff's statements to credit, and which

to discredit, beyond the boilerplate. See Mascio, 780 F.3d at

639-40. The ALJ describes using treatment notes and other parts

of the record to determine which of Plaintiff's statements to

believe. Specifically, those parts of the testimony that were

inconsistent with "multiple treatment notes," for example,

contributed to the determination that his statements were

partially credible. (Tr. at 25.)

Although the ALJ appears to engage in some credibility

analysis beyond the Mascio boilerplate, her analysis does not

-16-

quite rise to the level — as illustrated in Young — to sufficiently demonstrate how she decided which statements to believe and which to discredit. Given the limited and summary fashion of her analysis in the context of the entire record, this court cannot conclude that the credibility analysis here was sufficient to render the Craig step-two error harmless.[5]

---

[5] This court notes that an ALJ is not required to individually analyze each statement by the plaintiff in its discussion and analysis. However, and at the crux of the need to remand here, the ALJ must provide enough detail to allow the court to conduct a review of that analysis. While a statement-by-statement analysis is not required, overbroad characterizations depriving courts of the ability to conduct a meaningful review are problematic and can necessitate remand. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) ("In that regard, we agree with the Second Circuit that '[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' We find this to be such a case." (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)) (emphasis added)); Torres v. Colvin, CIVIL ACTION NO. 1:14-CV-00007-RLV, 2016 WL 54933, at *8 (W.D.N.C. Jan. 5, 2016) ("Consequently, the ALJ's decision cannot be affirmed because the Court cannot conduct a 'meaningful review' of his findings to determine whether his assessment of Plaintiff's residual functional capacity is supported by substantial evidence. Therefore, remand is required." (citation omitted)); Hicklin-Jones v. Colvin, CIVIL ACTION NO. 3:14-CV-584, 2015 WL 8958542, at *6 (W.D.N.C. Dec. 15, 2015) (declining to remand where "[t]he Court [wa]s not left to guess at how the ALJ arrived at his conclusions"). Here, the lack of depth in the analysis combined with the examples of potential mismatch between the ALJ's discussion and Plaintiff's testimony render the broad analysis insufficiently specific.

For example,[6] the ALJ does indicate that "[i]n evaluating
the persuasiveness of the claimant's testimony and other
statements," she compared it to other evidence of record. (Tr.
at 25.) To the extent this analysis focused on whether
Plaintiff's statements were "unsupported by and inconsistent
with other evidence of record," (id.), it was necessary in part
to review the credibility determination. However, this
determination by the ALJ focused on Plaintiff's allegations of
dizziness and pain and need for treatment and simply did not
address many of his other alleged symptoms. (Id.) Additionally,
and more concerning, some of the ALJ's determinations and
evaluations reveal apparent inconsistencies between her analysis
and Plaintiff's testimony. She credited some, but not all, of
his testimony, supporting her final determination that
"[b]ecause of these factors, the claimant's statements are
deemed partially credible. In situations where the claimant's
statements are not supported by other evidence of record, they
have been given little weight." (Id.)

As described hereinafter, despite accepting some of
Plaintiff's testimony, the ALJ clearly did not give weight to

_____

[6] This court cited, in its request for supplemental
briefing, two additional illustrations of this court's concerns
with the inconsistencies between the record and the ALJ's
analysis. (See Order (Doc. 18) at 2-4.)

-18-

other parts of his testimony, as she made findings that directly contradict claimant's testimony. In several instances, the ALJ finds that Plaintiff specifically reported a particular fact or situation but Plaintiff's testimony leaves that conclusion less than clear or even appears to contradict it.

As an example, the ALJ asserts that "[i]n activities of daily living, the claimant has no restriction" and "[t]he claimant reported performing all of his daily activities independently," concluding that "[t]here is no indication in the record that the claimant has a limitation in this area." (Id. at 23.) The ALJ further asserts that "[t]he claimant has lived independently throughout the relevant period." (Id.) However, in coming to this conclusion, the ALJ failed to explain why or how she discounted Plaintiff's testimony to the contrary.

Plaintiff's testimony at the hearing, summarized in boilerplate fashion by the ALJ as "performing all of his daily activities independently," includes sections from the transcript as follows:

Q.   You said that in the house that you live, the people do the chores and help you out. Are you able to do any chores to help out around the house?"

A.   No, I try, but I just can't do it. I can't do anything.

Q.   Tell me what happens when you try.

-19-

> A.    When I get out [of] the bed, I went to the kitchen and
>        tried to maybe wash the dishes. I'd wash maybe 1-2
>        dishes and stop and I couldn't do any more because my
>        cramps in my fingers and I start getting chest pains.

(Id. at 46-47.)

He also testified that "[t]he guys in that rooming house, they help me do everything. They help me get around, they help me cook. Basically, they look out for me." (Id. at 42.) Additionally, raising the question of living independently, Plaintiff further testified that he lived in a rooming house facility and those are the individuals who help him with cooking, getting around, and "everything." (Id. at 39, 42.)

The ALJ does not explain how she chose to both credit and discredit Plaintiff's testimony with respect to her final determination that he performs all daily living independently, beyond asserting that the "statements are deemed partially credible," depending on whether they are "supported by other evidence of record." (Id. at 25.)  It is not clear to this court how Plaintiff's description of daily living is or is not supported by other evidence of record.

Similarly, the ALJ discounted the opinions of Dr. Pamela A. Mund regarding Plaintiff's ability to stand and his leg cramps, stating that "[h]er statement that the claimant cannot walk more than 50 feet without resting is not supported by the claimant's

-20-

reports or her own findings" and "[t]he statement regarding leg cramps is not supported by commensurate complaints from the claimant." (Id. at 27-28.) However, the ALJ also recounted that Plaintiff could not walk or stand for a significant period of time "because of the significant chest pain and dizziness that results from any exertion." (Id. at 25.) Plaintiff testified that he was unable to get to the bathroom in sufficient time at night due to, among other factors, "cramps in my legs and stuff." (Id. at 45.) Further, in response to a question about his ability to walk without resting, Plaintiff testified that he could walk "[t]hree to four minutes" and then he would have to stop because of "cramps and slowness of breath, chest pains." (Id. at 45-46.) He also testified that "I get, catch the cramps in my fingers and in my legs when I exert myself and when I move a lot." (Id. at 45.) Again, the ALJ fails to explain how or why she chose to discredit some of these statements by Plaintiff, while believing and relying on others, to the extent that she relied upon them.

Additionally, and as noted earlier, the ALJ held that "[t]he claimant alleged significant dizziness and chest pain when walking or standing for more than a few minutes. However, in multiple treatment notes with cardiovascular specialists and other treating physicians, the claimant denied those symptoms,

-21-

alleging only some shortness of breath with exertion." (Id. at 25.)  While this finding appears facially adequate, the record is not nearly so consistent with this finding.  First, only once could this court find an instance in which claimant actually denied symptoms of chest pain and dizziness in the treatment notes. (Id. at 466.)  The treatment notes from this instance followed a tricuspid valve replacement several months earlier, which might explain why the symptoms were not present at that time.  (See id.)  Second, contrary to denying symptoms of chest pain, in many of the medical records claimant did describe some form of chest pain or chest discomfort.  (See id. at 107, 111, 321, 330-31, 337, 341-42, 410-11, 414, 435, 439, 458, 462.)  As a result, while the ALJ appears in part to explain her credibility issues, the explanation itself is either inconsistent with, or not supported by, the record.  This court cannot find "multiple treatment notes" in which "claimant denied [dizziness and chest pain] symptoms," and in fact, there appear to be a number of records in which claimant did describe chest pain, or at least discomfort. (See also id. at 414 (mentioning light-headed symptoms).)

While this court does not and will not re-weigh the evidence and the ALJ's determinations, it is bound, per Mascio, to ensure that the ALJ explained how credibility determinations

were made so that this court can perform a review. See, e.g.,
Davis v. Colvin, Civil Action No. 4:14-cv-00051, 2015 WL
10007370, at *6 (W.D. Va. Dec. 23, 2015) (remanding where "the
ALJ failed to make his credibility determination in a way that
allows for meaningful review" and instead made it in a way that
"frustrates any attempt by the Court to understand how the ALJ's
evaluation of [the claimant's] credibility factors into his
disability determination" and failed to "give an adequate
explanation as to why he came to that conclusion" (citing
Mascio, 780 F.3d at 639-40)).

V.    **CONCLUSION**

       **IT IS THEREFORE ORDERED** that the Commissioner's decision
finding no disability is **VACATED** and that the matter is **REMANDED**
for further administrative proceedings consistent with this
Memorandum Opinion and Order.[7]  To this extent, the
Commissioner's Motion for Judgment on the Pleadings (Doc. 16) is
**DENIED**, and Plaintiff's Motion for Judgment on the Pleadings
(Doc. 11) is **GRANTED.**

---

       [7] This court notes that to the extent its order must be
construed as a reversal to be within the scope of its powers
under sentence four of 42 U.S.C. § 405(g), it shall be construed
as such, however, given the reasoning behind this order and the
mandate in Mascio itself that the case be vacated and remanded,
see 780 F.3d at 640-41, this court orders that the decision be
vacated.

-23-

A judgment consistent with this Memorandum Opinion and Order will be entered contemporaneously herewith.

This the 23rd day of February, 2016.

_____
United States District Judge